We're ready for United States v. McComber. And Ms. Weeks? Good morning, Your Honors, and may it please the Court, Crystal Weeks on behalf of Appellant Jacky McComber. With Your Honor's indulgence, I'd like to take just two minutes to set the table for the three issues I want to focus on this morning, which are the spreadsheet, the jury instruction, and the prosecutorial misconduct. Each is emblematic of the same or defect in this case. Our criminal justice system rests on a simple rule. The burden of proof in a criminal case never shifts from the government to the defendant. The government tried this case as if the opposite were true. The burden shifting was no accidental mishap. It was the government's entire trial strategy. From the outset, the government made this case about on-site versus off-site time. It anchored its case in a purported summary spreadsheet that highlighted Ms. McComber's off-site time as presumptively fraudulent and deliberately excluded evidence of Ms. McComber working. This on-site, off-site framing worried the district court judge. At the close of the government's case in chief, the court expressed concern that the government's charts might give the jury the false impression that if Ms. McComber was off-site, that she couldn't be working. The court set out to instruct the jury on this issue, and that instruction, which was read three times to the jury and emphasized as very important, only further reinforced the burden shifting. The jury was told that it could only consider Ms. McComber's off-site time if it found she was working off-site. That flipped the default from a presumption of innocence, that her off-site time was to be presumed valid, to a presumption of guilt. That her off-site time... What is... In thinking about that, I read that in the briefs, and certainly agree with the proposition that the burden is on the government to prove beyond a reasonable doubt. But can something be factually, let me just say, unusual or less obviously related to the contract? I mean, from a factual matter, if I said I did my work every night between midnight and 7 a.m., I mean, that could be true, but that's kind of odd. And if you pointed that out and had evidence that I sleep a lot during nighttime, I mean, is that really shifting the burden, or just saying this is a little bit unusual? Most of the work here is expected to be done on-site. You have a whole bunch off-site, and they point out other evidence. I guess I'm raising the question of, if something is suspicious, arguably, why can't they point out that it's suspicious, and that not be part of meeting their burden, as opposed to shifting the burden? Well, Your Honor, we don't dispute that the government can certainly point that out, and the jury is entitled to draw inferences. But here, the inferences were unreasonable. The government said up front that this should be a full-time contract for the program manager. There's no evidence that Ms. McComart did not satisfy her obligations as a program manager. Well, she should at least be working when she's billing for work, shouldn't she? Correct, Your Honor. And the court found, in its Rule 29 order, found there's a long list of times when she's billing for eight hours, but doing things like going to music festivals, driving her daughter to college, going to hair appointments. Well, the college example, Your Honor, Ms. McComart testified that she didn't actually go on that trip, and that's the inherent problem with this spreadsheet. And the jury heard that? Correct, Your Honor, but that's the inherent problem with this spreadsheet, which was clearly an illustrative aid and told the jury. This was taken back to the deliberation room with the jury, and they were told to consider this as evidence on equal footing as the other exhibits. Can I ask you the elephant in the room question about that spreadsheet? Yes, Your Honor. Does the jury object to the admission of that spreadsheet on any of the grounds that you now advance in the district court? Your Honor, to be sure, the argument has varied on appeal, but Mr. Ahlers, to the no. Okay, so am I correct that every document summarized in that spreadsheet was admitted without objection? That is correct, Your Honor, but this is ... And do you have any authority for the proposition that says, once a document's been admitted, it can be used for literally any purpose, unless there's an express conditional limiting ruling? It's in. Once the documents are in, they're in, right? The documents are in, Your Honor. We think this is plain error. In the McGuire case, we submitted a Rule 28 letter on ... It says that ... There was an objection in McGuire. Another defendant objected, but I believe that the court there applied plain error because it found, like you're implying here, that the objection varied and was not on the same grounds. Didn't the court also find that there were actually mathematical errors in the chart in McGuire? That is correct, Your Honor. Just as the court has acknowledged here, there are a handful of errors, but says it shouldn't throw the baby out with the bathwater. We're in ... Are there mathematical errors here? No, Your Honor, but there are errors in the evidence that is submitted on this spreadsheet. There are times when the government put on here a credit card chart and highlighted it in yellow, which was there ... I don't mean to cut you off, because I've read that, and I think it's fair to say there's some errors there, and I think we've got to question that as whether the errors are sufficient. I don't think the law is that if there's an error in the summary, that makes it automatically inadmissible. It seems like you have a ... At best, you have plain error on accuracy. Then you have plain error on the shading, and then you have plain error on the descriptions. Okay? Assume I don't ... I think it's hard row to hoe on the first two, that the accuracies are enough to satisfy plain error, and that the shading is enough to satisfy plain error. Perhaps the comments aren't a summary, but are excerpts of favorable information. Cherry-picked favorite list. If that's true, you still have to overcome prejudice in a plain error review. All the documents from which those, as you say, cherry-picked language come from, were themselves admissible, and I think admitted. Maybe not. Can you really ... I don't know. I don't know. Can you show prejudice when the information in the comments, which I think is your best argument about the spreadsheet, were themselves admissible, could have been used and pointed out, could have been used as a demonstrative? I know you think putting all that together is worse for you. I may disagree, but does it really amount to prejudice and, you know, prong for plain error, which brings into question the integrity of the judicial system? It just seems like you've got a hard row to hoe since we're looking at this under plain error. Yes, Your Honor. Two points on that. One, I don't think that the comments can be disentangled from the color shading, because what the color shading did is it told the jury what conclusions to draw from the cherry-picked comments. No. I mean, that's your argument, but the shadings identified off-site work, and that's back to the other burden-shifting argument. That's an objective thing. I mean, maybe it did, but an argument is objectively the shading shows where the work is being done off-site, which at least creates some suspicion given the circumstances, at least in the government's mind. Maybe that's not technically a summary, but that just seems not nearly as objective and not nearly as strong as the argument about the comments. Well, accepting that the comments are error, Your Honor, this spreadsheet, and I think this is a very important point, was the government's entire case. We counted this spreadsheet was mentioned 161 times in the presence of the jury, 14 times in closing alone. At five different points in closing argument, the government told the jury to, quote-unquote, look at this spreadsheet when you're deliberating. That makes it all, I mean, this is probably prong for the way it operationalized this. This makes it all the bigger problem that none of these arguments were raised before the district court, because the whole idea is, look, you have some arguments that maybe the color is misleading. This all should have been sorted out because if this had been raised before the district court, the district court could have said, you know, you're right. Page five, that's inaccurate. Government, you have to change that. But now we're in a world in which we had a trial, this spreadsheet was extensively relied on, and no one objected, and you're asking us to throw out a criminal conviction based on an ... I get it, but I suspect you're different counsel on appeal. These are great arguments that could have been made to the district court, but the fact they haven't been made to the district court really complicates things here. Your Honor, and that is correct, we weren't trial counsel, but the court understood that this spreadsheet could be misleading, and she should have struck it. It shouldn't have gone back. It should have, at a minimum, been given a limiting instruction. Did you ask for one? No, Your Honor. Has this court ever reversed for a failure to give a limiting instruction that the party that would benefit from the limiting instruction never asked for? No, not that I'm aware of, Your Honor, but I still think under plain error ... Can I take you to a different instruction question? Correct. The burden shifting instruction? Yes. Why isn't that dead bang, not just forfeited, waived? Because defense counsel literally said on the record, that instruction is fine with me, and I know that I've written one, and I know we have other opinions, and say, when you say things like that, it's not just forfeited, it's waived, because you have consented to the instruction. Yes, Your Honor, and we cite the Rosa case in the Third Circuit, where counsel there also said, I'm satisfied. I have written a Fourth Circuit case that says that waives your objection. I understand, Your Honor, and in the interest of justice, this court can still consider issues ... No, no, no. If it's waived, it's gone. Something that's waived is gone, gone, gone. Your Honor, we still think that the instruction ... Unless it was ineffective assistance of counsel, but that's not the argument you've made. Correct. We did not raise that on direct appeal. But this instruction can still be considered if you're looking at cumulative error, and ... No, no, no. If it's waived, it's not error. A waiver eliminates the error. Your Honor, if you find it's waived, there's still the spreadsheet is plain error, the burden shifting comments on cross-examination of Ms. McComber. Just because a defendant takes the stand, their constitutional rights do not go out the window. The comments and questions of Ms. McComber, when she was on the stand, that asked her if she had come into this courtroom with evidence to prove her innocence, shifted the burden and that's a constitutional error, Your Honor, and then the burden shifts to the government to show harmlessness beyond a reasonable doubt, which we do not believe they can do. Where in the ... Is there a JA site for the government asking her if she could prove her innocence? Yes, Your Honor. This is the quote. Have you called in this case a single ... What's the JA? Oh, excuse me. 2671 to 72. Oh, I might not have it. Okay, go ahead. The government asks, have you called in this case a single witness who has come in this court and testified that they observed you working as the program manager on the Iron Bridge contract for an extended period of time? And that was after they also asked her, I was asking if you had shown any records to the jury demonstrating that you were providing the status reports. And our position is not that the government cannot ask questions that lead the jury to draw inferences or that question the credibility of the defendant, but once that shifts to what have you brought into this court under Parker, under St. Louis, that is suggesting that the defendant has an obligation to prove her innocence. How does that intersect with ... There are lots of cases about burden shifting. Many of the cases, many of the cases about burden shifting involve defendants who don't testify. Correct. But this defendant got on the stand and she made assertions that things were true. And I'll say my 20,000-foot overview sense is that the government ... No defendant has to testify. And if a defendant doesn't testify, they have an absolute right ... I don't have to ask a single cross-examination question, I don't have to call a single witness. I can do all those things. But my sense from the cases is that once the defendant takes the stand and once the defendant makes affirmative assertions of fact and asks the jury to credit them, the government's entitled to attack those assertions of fact. And one of the ways the government's entitled to attack those assertions of fact is to say, if the things that you are now asserting were true, it seems very likely that there would be other evidence of them being true. And the absence of that other evidence suggests that maybe what you're saying is not true. So why isn't ... Well, A, do you agree at a high level of generality that that's true? I agree with that, Your Honor. And that's not ... Okay, so why is what happened here? Because that's not how they framed the question. They framed it as, what have you brought into this courtroom? If Ms. McCormick had said, I'm innocent, which is effectively what she was saying when she said she worked off-site, they couldn't have been ... No, no, no. Hold on. That's not just I'm innocent. That is my alternative, affirmative explanation for why my timesheets aren't lies. That speaks directly to an element of offense. It's not like Parker, an alibi, where they were able to say, is there anybody you can testify that you called your sister? But if the government had asked, do you have any documentation to prove you were working? Would that be okay? That would be okay, Your Honor, but saying you've not brought into this courtroom anything to show the jury after we're already dealing with the presumption of off-site work being invalid and the jury instruction has been considered. I mean, I can see the difference in those two questions. Have you brought anything into the courtroom that shows you were working during those times? But it's not a huge difference between that and saying, do you have any documentation to say you're working? I mean, it's different. I get it. I get it. Look, I got some questions about some things for your colleagues there, but that's not It's a fine line, I think, in many of these cases, Your Honor, and I agree, many of them deal with defendants who don't take the stand, but in each case, the courts are saying, this is a fine line, this is borderline improper. But why isn't that, well, once you say it's a fine line, why isn't that ballgame on a forfeited argument? That once you say something is a fine line, you have failed prong two. Your Honor, if they step over the line, just as in Schmitz, which is the government's favorite case. At this point, it's got to be plain, and if it's a fine line. Yeah, under prong two of Alano, you can't get relief on a forfeited error unless it's clear or obvious, and once you tell me it's a fine line, and once you tell me that those two questions sound very similar, I don't know how it's clear and obvious error. I mean, Your Honor, saying to the defendant, have you come into this courtroom with any evidence to prove an element of the offense that is clear error, and then it shifts to, okay, this is not a You argued a similar thing in closing argument to this, Your Honor.  Correct. In closing, they said the defendant has not provided any evidence. But speaking of evidence, why isn't then this, I mean, this was a 16-day trial with 18 government witnesses and the defense put on a case, why isn't the cumulative effect of the entire trial remove any prejudice from those isolated statements from the prosecution? We think the cumulative effect of the entire trial only reinforces the trial that was guided by this spreadsheet. Well, but the jury didn't think that. The jury took this spreadsheet, this roadmap to the government's argument into the deliberation room with them after the government laid 22 pages of it on the courtroom floor during closing and told the jury, quote-unquote, do you see that blue? That's an ocean of fraud. And then they went promptly to deliberate. And it wasn't close. It took over nine hours for them to deliberate. And then there were, well, nine hours isn't that long on a 16-day trial with all of those witnesses and materials. And perhaps it would be different had someone objected, but they did not. Anne, your time's up, but you have some time in rebuttal. Thank you, Your Honor. All right, Mr. Klayman. Good morning, Your Honors, and may it please the Court. William Klayman for the United States. This is a straightforward government procurement fraud case in which Jackie McComber billed the government for exactly eight hours of work day after day over the course of 19 months for work that she was not actually preparing. How is the right-hand column where you claim evidence that I think is probably admissible, but is your best evidence from a bunch of documents in any way, shape, or form a summary? It's not a summary. It's what you like out of all maybe those documents. I mean, a summary is a summary. It's not a summary of the best evidence for you. And this isn't even a summary of the best evidence. It's all the best evidence for you. I don't see how that comes close to being a summary under the federal rules of evidence. Understood, Your Honor, and a couple of points in response, if I can. I think, first of all, when the agent was asked how he put together this spreadsheet, why they put it together, he did testify this was meant to summarize voluminous records that he was just, in the notes column, putting forth exact, precise quotes or very short snippets from the many voluminous records that he collected throughout the period. So he's just getting some examples, a summary. So he's got some, where are the summaries that are not harmful to the defendant? Because if you're summarizing, presumably you've got a sample of everything. It seems to me like we don't have that. We've got only the bad stuff. And a couple more points in response to that, if I may, Your Honor. So in terms of including exculpatory and inculpatory evidence, I think the agent was asked during his cross-examination, he included, for example, an allegation from the whistleblower letters saying that Ms. McComber had gone to a golf tournament on a certain day and therefore could not possibly have billed eight hours. And then right below that, they included a letter from Ms. McComber's counsel specifically denying that that had happened. So you think this fairly represents all the exculpatory and inculpatory evidence? Is that right? I think the agent selected evidence that was helpful to the government's case, for sure. I think they did also include some exculpatory evidence. I guess I will just say, from this judge's perspective, you should be darned lucky they didn't object to this spreadsheet because like Judge Quattlebaum, I am profoundly skeptical that this is admissible, substantive evidence. This looks like a closing demonstrative. In fact, the ocean of fraud makes clear it was being used to me as a demonstrative aid, not as substantive evidence. I understand your point is well taken, Judge Paytons. I think they did not object to this spreadsheet at all. It's really good for you that they didn't. And while I'm there, the statements at closing arguments about would this amount be material to you are things you learn in trial ad 101 you don't do. It's not like just one error here. I think the questions that were raised about bringing things to the courtroom, it seems like this prosecution has stuff going on that is obviously not appropriate. Now, there should be objections. And when there are objections, they'd be ruled on. But it's not just one thing. Understood, Your Honor. And before going to those pecuniary interest remarks I think that you were referring to, I did want to make one more point regarding the spreadsheet, which is that the spreadsheet was provided to trial counsel in advance of trial. As I think Judge Hytens mentioned, all of the underlying records were admitted at trial. And so the trial counsel for Ms. McComber could have and did in fact press the agent about these asserted omissions. I think trial counsel did bring up some emails that they thought were helpful for Ms. McComber and pressed the agent, why didn't you include these? So that was all aired in front of the jury. And Judge Hollander instructed the jury, when you go back to your deliberations, you'll have the spreadsheet, but you'll also have the underlying records and the testimony, and you should refer to those records to the extent you have concerns about the spreadsheet. So I understand... You may have a prejudice issue that helps you, that maybe there's harmless error, maybe some of it's not plain error, but if you want to talk about the comments at closing, do you think those are appropriate? Specifically, how about this one? There is no evidence that's presented in this case, and the defense had the chance to present whatever evidence they wanted to. J.A. 3051. Why isn't that just a dead violation of cases like Stockton? I understand, Your Honor, and I think if I could, I think what the AUSA was responding to there was the affirmative case Ms. McComber put on, where she talked about how as a program manager for IronBridge, she was routinely meeting with people from outside companies... So now you're telling me what you think the AUSA was doing, but let me ask a threshold question. Was that a proper statement? I'm sorry, if Your Honor could repeat it, I... There is no evidence that's been presented in this case, and the defense had the chance to present whatever evidence they wanted to, J.A. 3051. Again, I think... I'm sorry, that's a yes or no question. Is that a proper statement or not? In isolation, I understand that sounds improper. It is... It is improper. I understand, Your Honor, and my point is simply that I think the comments weren't necessarily made in isolation. I think the AUSA was trying to respond to what they saw as... It seems like there might be some remedial things you're allowed to say in closing training. I understand, Your Honor. And I would note a couple of things as well. First of all, they did not object to that comment in closing arguments. This was actually brought up with the district court. Judge Hollander, before closing arguments, she, you know, assessed what they were planning to say and gave them the okay. Look, you have the non-objection question. I'm pretty confident, maybe if you want to point to the J.A. where the statement Judge Heitens made or the statement about wouldn't this be material to you, was that clear with the district court? Those specific statements? I don't think the exact quotes. I think the gist, they were going to comment on what they had to say. They were going to say what I explored with the opposing counsel and say, look, the defendant got on the stand. And when she got on the stand, she made claims. And when she made claims, we can point out the problems with the claims we made. And they were allowed to do that. I read Judge Hollander saying, of course you can do that. You can always do that. But I agree with Judge Quattlebaum. I don't see anything in the transcript where Judge Hollander says these are things you could say in closing. Understood, Your Honor. And I don't think there is anything to that effect in the transcript. The other thing I would point to, on top of them not objecting to this comment, is that the jury instructions made clear, as well as the prosecutor's closing argument, I believe the same AUSA said, we have the burden of proof. Judge Hollander then repeatedly instructed the jury that the government alone bears the burden of proof. So I understand Your Honor's concerns with some of these comments. But I think, given the lack of objection, given the standard of review that we're operating under here, I don't think they've proven plain error. And does the government... You said you understand our concerns. Does the government itself have concerns with some of the comments that were made, both in cross-examination and in closing argument? I think the questions during cross-examination toed the line. I think that the AUSA was... It also sounded like a burden-shifting question, as well. I mean, you can ask those questions in a different way. What were you getting ready to say about the closing argument? I was simply going to say that I think these were a handful of comments. I think we were talking about six questions during a very lengthy cross-examination, four or so remarks during a very lengthy closing argument during an even lengthier trial. I know that in this case, for your argument here, the cumulative effect and the fact that they didn't object helps you in this case. I'm just talking about, in your office, do you have a concern with it? I was in AUSA for a while. And I messed up all the time. We all do. And every Monday morning, we'd have meetings where we would have lessons learned about how we messed up. So, is there something like that hopefully going on in the U.S. Attorney's Office and wherever you are? So, I'm actually not from the U.S. Attorney's Office. I'm sure there are post-trial debriefs about issues that occurred. I'm sure the briefing on appeal... Where are you from? I'm from Maine Justice. Well, that's even better, then. Does Maine Justice have any concerns with this type of closing argument? I think in our view, Your Honor, they towed the line. In closing argument, you already said that... I thought you said they went over the line in closing argument at least once. I think the comment Your Honor read, I think in isolation, yes. I can see that that is not... You can see or you concede? I can see. So, you're not conceding? I think not exactly, Your Honor. I understand... Okay, so fine. Make the defense why that's okay. I mean, you either concede it or you make the argument why that's okay. I think it was not improper to respond to Ms. McComber's defense that she did do the work. 100% agree. And I think that comment was responsive to that argument. Wait, wait. There's lots of things I can respond to, but that doesn't mean anything I say in response to them is okay. That's just a category mistake. I understand, Your Honor. Look, it towed the line of improper. I'm sure the AUSA recognizes that now. I can't say... Do they? I have not spoken to the AUSA who made the comment, so I can't say for certain, but I'm sure he's listening to these arguments. I'm sure he's picking up what Your Honors are saying here. The last point I wanted to talk about with the officer... You're arguing the appeal, but you haven't talked to the lawyers that tried the case? I've spoken with the lead trial counsel, Mr. Gray, as well as the appellate chief from the office. I believe this was the fraud trial attorney who made this comment. I did want to briefly address the off-site jury instruction. I agree with Judge Heitens that I think this argument was waived here. Not only did the trial counsel say that he was completely satisfied with the instruction, he went on to rely on it in his closing arguments multiple times. Even if the court reaches the merits of that issue, I don't read the instruction as really burden-shifting. I read it as communicating to the jury exactly what Ms. McComber wanted, which is that she's allowed to work off-site, and if she billed hours that she did on the contract off-site, the jury can consider that as going towards her actual workable, billable hours. To the extent that the court disagrees with that interpretation, I just wanted to note that I think that instruction needs to be understood in the context of the entire jury instructions, which, again, made clear from Judge Hollander that the burden of proof is on the government. If the court doesn't have any other questions, we'd rest on our papers and ask that you affirm the judgment below. Do you all have other questions? All right, thank you. Your Honor, I'd like to make just three points, too, about the record and the facts, and one legal. I believe I heard my friend on the other side reference Ms. McComber's billing eight hours every single day. In fact, that's mentioned frequently in their brief. It is not uncommon for government employees and government contractors to bill eight hours every day. And I would ask Your Honors to go back and look... Eight hours on the dot? I mean, what strikes me is... What strikes me is, in many ways, the single most incriminating fact in this case. It's like day after day after day, 8.0, 8.0, 8.0. I would ask Your Honor to go to JA 3498-3561, and this is volumes 7 to 8, and you will see that many... This is a printout of all the contractors on Ironbridge. Many contractors, including Jason Doyle, who was one of the government's star witnesses, who they claim did some of her work, eight hours every single day. That's Jason Doyle, Michael Pierman, Tyler Gary, Samantha Heinlein. Eight hours every single day. And that sounds like a good closing argument that the jury probably took into account. Your Honor, that was never pointed out to the jury, unfortunately. And then, as to whether Mr. Ahler's trial counsel had a chance to... And that's a problem for the appellant as well, isn't it? That that was never pointed out to the jury? That the other employees were billing eight hours a day? Mm-hmm. Yes. I mean, it could be a problem, Your Honor, but the fact remains that that doesn't get past the fact that the jury was asked to draw unreasonable inferences, and the jury had that. So the people time details, that was an exhibit that they had with them in the deliberation room. Go ahead. I'm sorry. No, you go ahead. But let's assume it's being done a lot. Does the fact that it's being done a lot make it any less incriminating? I mean, it may be that they should have pursued others, but, I mean, you know, we've all... Those who have been in private practice have billed hours. If I bill eight hours a day, I mean, you know, every day, and I'm just trying to think, okay, I did it, but my associates did it too, how that helps me? Your Honor, I would just say that it's quite different than a lawyer billing in six-minute increments, and Ms. McCormick's testimony was that she frequently worked more than eight hours a day, but could only put eight hours on her time sheet. She was obligated under the terms of the contract to work eight hours each day, and that's what she did. And then the last thing I want to point out is I did hear my friend on the other side concede that the statement in closing was improper, and it was objected to. In fact, the government submitted a letter asking permission to do what it did up front, and the judge held a conference, and the objection was heard, and the judge's position was that Ms. McCormick had opened the door to these comments. And Benmore, Squirrelly, and Chapman, not Alano, and the government has the burden to show harmlessness beyond a reasonable doubt, and it cannot be said that the trial outcome would be the same but for that conduct. Thank you, Your Honors. All right, thank you both for your argument.
judges: Stephanie D. Thacker, A. Marvin Quattlebaum Jr., Toby J. Heytens